# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BC TAVERN OF KENOSHA, INC.,**
*doing business as*
**The Library Bar,**

        Plaintiff,

v.                                         Case No. 11-C-959

**CITY OF KENOSHA,**

        Defendant.

## DECISION AND ORDER ON THE PARTIES' MOTIONS
## FOR SUMMARY JUDGMENT

### I. FACTS AND PROCEDURAL HISTORY

The Library Bar is the most-recent name of the bar that BC Tavern of Kenosha, Inc. operates at 4626 Sheridan Road in Kenosha, Wisconsin. (Docket Nos. 19, ¶¶6-7; 31, ¶¶8-9.) It is licensed by the City of Kenosha to sell alcohol by the drink, and prior to the city not renewing its license in 2010, it held a cabaret license authorizing the bar to host live entertainment, usually bands. (Docket No. 19, ¶¶6, 8-11.) Without a cabaret license, a business holding a liquor license may not host live music performances, advertise or feature dancing, or offer other live entertainment such as "the performance of any act, play or stunt, amateur talent contest, or disc jockey show." (Docket No. 21-4 at 14.) The cabaret license ordinance states in relevant part:

> In determining whether a Cabaret License should be granted, the Common Council shall consider the following factors, giving to each whatever weight is appropriate in the particular factual circumstances:
>
> 1. Whether the proposed license will have a substantial negative impact upon the surrounding properties or the neighborhood within 5,280 feet of the licensed

premises, in terms of increasing noise, as defined in Chapter 23 of the Code of General Ordinances, and/or traffic congestion.

2. The availability and type of parking on or off the proposed licensed premises.

3. The existing or planned character of the neighborhood.

4. Applicant's compliance and past performance with any/all licensing laws.

(Docket Nos. 21-4 at 14; 21-5 at 14.)

The city's 2010 review of the bar's application for renewal of its cabaret license involved multiple rounds of proceedings before the Common Council and the Council's Licensing & Permit Committee, eventually culminating in the Committee recommending that the Council grant the renewal and the Council, after a hearing, voting to deny the license for the stated reason that the license would be incompatible with the surrounding neighborhood. (Docket No. 31, ¶¶15-22.) The Library Bar challenged this decision and the city's cabaret licensing ordinance in Wisconsin Circuit Court. On August 2, 2011 the Circuit Court concluded that the ordinance was unconstitutional because it lacked a time limit for the resolution of an application. (Docket Nos. 31, ¶¶31-35; see also 21-2; 21-3.) Kenosha promptly amended its ordinance to incorporate a 28-day time limit but otherwise the ordinance remained the same. (Docket No. 31, ¶¶ 29-30; see also Docket No. 21-5 at 14-15.) The plaintiff filed the present action shortly thereafter. In this action under 42 U.S.C. § 1983, the plaintiff contends that both the old and new ordinances are unconstitutional under the First and Fourteenth Amendments and seeks damages along with injunctive and declaratory relief. (Docket No. 1.) During the pendency of this action, the plaintiff applied for and received on July 16, 2012 a cabaret license from the City of Kenosha. (Docket No. 31, ¶¶36-37.)

On November 21, 2012, the Library Bar moved for partial summary judgment, (Docket No. 17), and on December 21, 2012, Kenosha did likewise, (Docket No. 22). The pleadings on these cross-motions are closed and both are ready for resolution. All parties previously consented to the full jurisdiction of a magistrate judge. (Docket Nos. 3, 8.)

## II. STANDING AND MOOTNESS

Kenosha argues that because The Library Bar now has a cabaret license, it lacks standing to pursue a facial challenge to the ordinance. (Docket No. 23 at 9-11.) Moreover, it argues that any claim related to the prior ordinance was mooted by the subsequent amendment. (Docket No. 23 at 11-12.) The court concludes that the plaintiff has standing to pursue its challenge to the existing ordinance and not all of its claims related to the prior ordinance have been mooted by its amendment.

Under Article III of the Constitution, a federal court may hear a case only if there exists an actual case or controversy. DH2, Inc. v. United States SEC, 422 F.3d 591, 596 (7th Cir. 2005) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). One aspect of the constitutional case or controversy requirement is standing whereby the party seeking to invoke federal jurisdiction must satisfy three elements: "injury in fact, a causal connection between the injury and the defendant's conduct, and likely redressability through a favorable decision." Disability Rights Wis., Inc. v. Walworth County Bd. of Supervisors, 522 F.3d 796, 800 (7th Cir. 2008) (quoting Winkler v. Gates, 481 F.3d 977, 979 (7th Cir. 2007)).

An injury in fact may be prospective and need not be substantial. Sierra Club v. Franklin County Power of Ill., LLC, 546 F.3d 918, 926 (7th Cir. 2008). "[A]n identifiable trifle will suffice." Id. (quoting Lafleur v. Whitman, 300 F.3d 256, 270 (2d Cir. 2002)). Moreover, a litigant need not "await the consummation of threatened injury" before obtaining relief; the threat of an injury may satisfy Article III's standing requirement. Id. (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). "Injury need not be certain." Brandt v. Village of Winnetka, 612 F.3d 647, 649 (7th Cir. 2010). There is always the possibility that the plaintiff will alter its intended plans or the defendant will change the ordinance, but these potentialities do not mean that there is not a live case or controversy. Id. Thus, the Court of Appeals for the Seventh Circuit held, for example,

3

there existed a sufficient injury in fact for a litigant to challenge the construction of a power plant notwithstanding the fact that the power plant would not begin to possibly affect the plaintiff's air quality for at least ten years given that was how long it would take to construct the power plant. Sierra Club, 546 F.3d at 926.

With respect to the prior ordinance, the plaintiff has adequately alleged that it was injured by the absence of a time limit for review of an application in that the plaintiff may be able to demonstrate that it suffered damages as a result not being able to challenge the defendant's actions sooner in circuit court. This injury was traceable to the defendant's lack of a time limit within the ordinance and is redressable through a favorable decision in this court. Accordingly, the plaintiff has standing to challenge the prior ordinance.

As for the current ordinance, the plaintiff contends, in part, that as a current license holder who must annually reapply, it has been forced to self-censor its expressive activities to stay away from expressive activities that might offend the Council, which in response would use the alleged amorphous criteria in the ordinance, including "[t]he existing or planned character of the neighborhood," to refuse to renew its license. Thus, it contends that the licensing scheme is unconstitutional and seeks declaratory judgment to that effect along with injunctive relief barring its enforcement.

Based upon the foregoing, the court concludes that the plaintiff has adequately demonstrated an injury in fact, a causal connection to the challenged ordinance, and the availability of redress through a favorable judgment in this court. Accordingly, the court concludes that the plaintiff has standing to challenge both the prior and current ordinances.

Mootness is the second aspect of Article III's case or controversy requirement. Worldwide St. Preachers' Fellowship v. Peterson, 388 F.3d 555, 558 (7th Cir. 2004); Tobin for Governor v. Ill. Bd. of Elections, 268 F.3d 517, 528 (7th Cir. 2001) (citing Bd. of Ed. of Downers Grove Grade Sch.

4

Dist. No. 58 v. Steven L., 89 F.3d 464, 467 (7th Cir. 1996)). If a case no longer presents a live case or controversy, the court lacks jurisdiction to resolve the matter. Peterson, 388 F.3d at 558.

Any claim for prospective equitable relief under the prior ordinance as a result of the absence of a time limit is plainly moot in light of the fact that the ordinance has been amended. See Zessar v. Keith, 536 F.3d 788, 793 (7th Cir. 2008). However, the plaintiff also seeks damages resulting from the lack of a time limit under the prior ordinance. This claim for damages resulting from the time that the plaintiff's application was under review has not been mooted by the subsequent amendment of the ordinance. The question of whether or not the plaintiff will be able to prove that it suffered any damages is not before this court at this time. With respect to the plaintiff's claim that both the prior and current ordinances are unconstitutional due to an alleged absence of restraints upon the discretion of the decision-maker, the fact that the plaintiff has been granted a license does not moot this facial challenge.

### III. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A material fact is one that might affect the outcome of the case, and a nonmoving party's dispute is "genuine" only if a reasonable finder of fact could find in the nonmoving party's favor at trial. Anderson, 477 U.S. at 248-49. The court views the facts in the light most favorable to the non-moving party, and likewise it draws all inferences in the non-movant's favor. Ault v. Speicher, 634 F.3d 942, 945 (7th Cir. 2011). The court may not weigh the evidence or make credibility determinations. Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003). Thus, the nonmoving party will defeat a motion for summary judgment if it is able to produce admissible evidence that, when viewed in the most favorable light, would be sufficient to enable the

finder of fact to return a verdict in its favor. Fleishman v. Cont'l Cas. Co., 698 F.3d 598, 603 (7th Cir. 2012).

**IV. ANALYSIS**

"Threatening penalties for future speech goes by the name 'prior restraint,' and a prior restraint is the quintessential first-amendment violation." Fairley v. Andrews, 578 F.3d 518, 525 (7th Cir. 2009). Requiring a license to engage in protected speech may be regarded as a prior restraint. Weinberg v. City of Chi., 310 F.3d 1029, 1044 (7th Cir. 2002) (quoting Shuttlesworth v. Birmingham, 394 U.S. 147, 150-51 (1969)). While not unconstitutional per se, there is a heavy presumption that a prior restraint is constitutionally invalid. FW/PBS, Inc. v. Dallas, 493 U.S. 215, 226 (1990). A municipal licensing scheme may constitute an unconstitutional prior restraint when it places unbridled discretion in the hands of a government official or agency, Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 757 (1988), or if it "fails to place limits on the time within which the decisionmaker must issue the license…." FW/PBS, 493 U.S. at 226.

The Kenosha County Circuit Court concluded that the prior ordinance was unconstitutional because it lacked a limit on the amount of time for completing any step of the application review process. (Docket No. 21-2 at 19.) The plaintiff contends that this state court order must be afforded preclusive effect in this court, whereas to the defendant contends that the doctrine does not apply.

The court finds it unnecessary to resolve the dispute over whether issue preclusion applies to the plaintiff's claim that the prior ordinance was an unconstitutional prior restraint because it lacked a time limit for the decision-maker to act or whether the defendant has waived its opposition by failing to address the issue. Deciding the issue of preclusion or waiver is not necessary because the end result is the same. The prior restraint challenge was not complicated for the circuit court nor is it for this court. Live entertainment is activity protected by the First Amendment. See, e.g., Barnes v. Glen Theatre, 501 U.S. 560, 565-66 (1991). Both the prior and current city ordinances are limited

6

to whether an establishment with a liquor license may engage in live entertainment and thus have a "close enough nexus to expression or to conduct commonly associated with expression." Weinberg, 310 F.3d at 1044 (quoting Lakewood, 486 U.S. at 759). An ordinance requiring persons to obtain a license before exercising a First Amendment right must include a time limit for the decision-maker to act. See FW/PBS, 493 U.S. at 226-28. The prior ordinance did not include a time limit and thus was an unconstitutional prior restraint.

The more difficult question is whether both the prior and the current ordinance "confer the government with 'substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers.'" Weinberg, 310 F.3d at 1044 (quoting Lakewood, 486 U.S. at 759). The plaintiff does not contend that Kenosha may not require taverns to obtain a license for live entertainment and does not challenge the licensing scheme as an invalid time, place, and manner restriction. (Docket No. 30 at 7-10.) Rather, the plaintiff's challenge to the licensing scheme is limited to the claim that the current ordinance is (and thus the prior ordinance necessarily was) an unconstitutional prior restraint for lack of sufficient specific and objective standards to govern the licensing decision.

The Supreme Court held that licensing schemes whereby the decision-maker has unfettered discretion to permit protected expression are unconstitutional. See, e.g., Lakewood, 486 U.S. at 757 (citing cases). "It is insufficient for the government body to claim that it uses set criteria; rather, those standards must be incorporated into the regulation or publicized by binding administrative or judicial construction." Int'l Union of Operating Eng'rs, Local 150 v. Village of Orland Park, 139 F. Supp. 2d 950, 960 (N.D. Ill. 2001) (citing Lakewood, 486 U.S. at 770); see also Weinberg, 310 F.3d at 1046 ("We cannot presume that officials will act in good faith and follow standards not explicitly contained in the ordinance.") It is not the court's role to write limits into an otherwise silent

7

licensing scheme. Cantrell v. Rumman, 2005 U.S. Dist. LEXIS 9512 (N.D. Ill. Feb. 9, 2005) (citing Lakewood, 486 U.S. at 770).

The prohibition against "unfettered discretion" does not mean that a licensing scheme must deprive the officials of all discretion to be able to pass constitutional muster. See MacDonald v. City of Chicago, 243 F.3d 1021, 1028 (7th Cir. 2001); Graff v. City of Chicago, 9 F.3d 1309, 1318-19 (7th Cir. 1993) (en banc); see also Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989) ("While these standards are undoubtedly flexible, and the officials implementing them will exercise considerable discretion, perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.") A licensing scheme that regulates constitutionally protected expression must contain "'narrow, objective, and definite standards' to guide a governmental authority, so that such regulations do not operate as a prior restraint that may result in censorship." DeBoer v. Village of Oak Park, 267 F.3d 558, 573 (7th Cir. 2001) (quoting Shuttlesworth, 394 U.S. at 151). "Exactly how much guidance on an official's discretion is required to avoid unconstitutionality is not crystal clear." Ill. One News, Inc. v. City of Marshall, 2006 U.S. Dist. LEXIS 9570 (S.D. Ill. Feb. 22, 2006).

The relevant ordinances plainly afford the Kenosha Council some degree of discretion. In an effort to demonstrate that discretion is too great, the plaintiff focuses largely upon the requirement that the Council consider "[t]he existing or planned character of the neighborhood" and contends that because the ordinance permits the Council to afford this factor controlling weight, this amounts to unbridled discretion. (Docket No. 18 at 11-15.) In support, the plaintiff cites cases where courts have held that when a decision is governed by considerations of the public health, safety and welfare of the community in deciding whether to permit protected speech, the discretion is unbridled and thus the licensing scheme is unconstitutional. See, e.g, Shuttlesworth, 394 U.S. at 150-51 (holding that ordinance under which the only criteria for determining whether to grant a

8

permit was Commission members' own ideas of "public welfare, peace, safety, health, decency, good order, morals or convenience" was unconstitutional because it lacked "narrow, objective, and definite standards to guide the licensing authority").

Contrary to the plaintiff's contention that consideration of the "existing or planned character of the neighborhood" amounts to unbridled discretion, the defendant points out that in Blue Canary Corp. v. City of Milwaukee, 251 F.3d 1121 (7th Cir. 2001), the court found no constitutional infirmity in a licensing ordinance that instructed the decision-maker to consider "whether or not the applicant's proposed operations are basically compatible with the normal activity of the neighborhood in which the licensed premises is to be located." However, Blue Canary is distinguishable. Although the plaintiff operated a bar that offered exotic dancing (which is constitutionally protected), the challenged licensing ordinance related to liquor licenses and the right to sell liquor is not protected by the First Amendment. Id. at 1123. The court concluded that it was permissible for the City to take into account the nature of the entertainment the plaintiff offered when considering whether the operation was compatible with the neighborhood and thus whether the liquor license should be renewed. Id. at 1123-24. Contrarily, the present licensing ordinance directly relates to constitutionally protected conduct.

Licensing schemes under which decision-makers are instructed to apply amorphous criteria have been struck down as unconstitutional. For example, the Court of Appeals for the Eleventh Circuit held that decision-makers had unbridled discretion under the zoning ordinance despite articulating nine criteria that must be considered because none was precise and objective. Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1362 (11th Cir. 1999). That ordinance, in part, called for buildings to be "sufficiently accessible," a standard the court concluded was insufficiently precise when it could have utilized objective criteria such as "there must be x number of doors per square foot." Id. In the view of the court, the criteria set forth in the ordinance "empower[ed] the

zoning board to covertly discriminate against adult entertainment establishments under the guise of general 'compatibility' or 'environmental' considerations," and thus the ordinance was unconstitutional. Id.

Like the ordinance at issue in Lady J., the present ordinance does not quantify what might constitute a "substantial negative impact upon the surrounding properties or the neighborhood." It simply instructs the Council to consider parking without setting forth any criteria for determining how much is enough, and offers no means for objectively quantifying past performance and compliance with licensing laws. However, the Court of Appeals for the Seventh Circuit has not viewed licensing schemes as harshly as the Eleventh Circuit. In MacDonald, 243 F.3d 1021, the court concluded that a parade ordinance that required the city's Transportation Commissioner reviewing a parade permit application to consider whether the "proposed activity will … substantially or unnecessarily interfere with traffic in the area contiguous to the route," the availability of a "sufficient number of peace officers," and whether the parade would "prevent proper fire and police protection" did not vest the Commissioner with unbridled discretion. The court concluded that "loose language" such as "substantially" "unnecessarily" and "sufficient" actually served to curtail the Commissioner's discretion by establishing a higher threshold of harm that must be satisfied before a permit might be denied. Id. at 1026, 1028.

But an ordinance is not required to curtail a decision-maker's discretion by utilizing terms suggesting the degree of impact necessary, such as "substantially." In an earlier case challenging Chicago's ordinance for the licensing of newsstands, the en banc court concluded that the Commissioner of Transportation's discretion was sufficiently limited by an ordinance that instructed him to consider

> (1) Whether the design, materials and color scheme of the newspaper stand comport with and enhance the quality and character of the streetscape, including nearby development and existing land uses; (2) Whether the newspaper stand complies with this code; (3) Whether the applicant has previously operated a newspaper stand at

10

> that location; (4) The extent to which services that would be offered by the newspaper stand are already available in the area; (5) The number of daily publications proposed to be sold from the newspaper stand; and (6) The size of the stand relative to the number of days the stand will be open and operating.

Graff, 9 F.3d at 1317-18.

Nevertheless, more recently, the court concluded a policy permitting groups to use Village Hall facilities if the primary purpose of the use is "providing a civic program or activity which benefits the public as a whole" was facially unconstitutional because it vested unbridled discretion with the Village Clerk. DeBoer, 267 F.3d at 573. It stated, "Unlike those regulations that this court has found not to grant unfettered discretion, the Village's requirement provides no concrete standards or guideposts by which Village officials can gauge whether an event satisfies this precondition to the exercise of First Amendment rights." Id. (citing MacDonald, 243 F.3d at 1028; Graff, 9 F3d at 1317-19).

The court finds two district court decisions from within the Seventh Circuit especially analogous to the question presently before the court. In Gaylor v. Thompson, 939 F. Supp. 1363, 1373 (W.D. Wis. 1996), the court held that a decision-maker was not afforded unbridled discretion by the requirement that he consider whether a display would be "appropriate to the physical context of the building or facility" when deciding whether to approve a display in a public building. In Trewhella v. City of Lake Geneva, 249 F. Supp. 2d 1057, 1076 (E.D. Wis. 2003), the court held that a police chief was not afforded unbridled discretion by an ordinance that instructed him to consider whether a parade could proceed along its route without "unreasonable delays" when deciding whether to grant a parade permit.

Having considered the foregoing cases, it is the conclusion of the court that the relevant ordinance sets forth sufficiently definite criteria that the decision-maker must consider so that there is not too great a risk that it could be used to shield prohibited censorship of speech. It is plain that the ordinance does permit the decision-maker to exercise some degree of discretion. "But that is

'the business of government.'" Graff, 9 F.3d at 1319 (quoting Chicago Observer, Inc. v. City of Chicago, 929 F.2d 325, 329 (7th Cir. 1991)). The decision-maker's discretion is far from unfettered.

The court regards Kenosha's cabaret licensing scheme as analogous to those found constitutionally sufficient in MacDonald, Graff, Gaylor, and Trewhella. Despite certain "loose language," the ordinance sets forth finite criteria sufficient to restrict the discretion of the decision-maker. In particular, the court does not regard the requirement that the Council consider "[t]he existing or planned character of the neighborhood" as akin to a requirement that a decision-maker consider the public health, safety and welfare of the community, see Shuttlesworth, 394 U.S. at 151, or whether an activity "benefits the public as a whole," DeBoer, 267 F.3d at 573. In zoning and licensing schemes, "planned character" is not an uncommon phrase. See, e.g., Reed v. Town of Gilbert, 2011 U.S. Dist. LEXIS 139256, *7 (D. Ariz. 2011) (discussing town sign regulation); Am. Atheists, Inc. v. City of Detroit, 503 F. Supp. 2d 845 (E.D. Mich. 2007) (discussing eligibility of parking lots for reimbursement grants) aff'd in part and rev'd in part, 567 F.3d 278 (6th Cir. 2009); Primeco Personal Communs. Ltd. Pshp. v. Lake County, 1998 U.S. Dist. LEXIS 22603 (M.D. Fla. July 17, 1998) (discussing conditional use permits). "Character of the neighborhood" in the context of land use or zoning measures is readily understood to encompass the municipality's formally articulated intended utilizations of property in an area. On the other hand, construing the phrase "existing or planned character of the neighborhood" in an overly broad manner so as to encompass anything but the City's formalized design for a neighborhood would not be warranted.

Under what the court believes is the appropriate and reasonable construction of the phrase, it should not be interpreted to include, as the plaintiff seems to contend, (see Docket No. 18 at 12), an authorization that the Council consider whether the cabaret license applicant will host a type of music that is "out of character" for the neighborhood (e.g. hip-hop in a neighborhood the Council believes does or should host only country music). This argument requires attaching a colloquial

12

meaning to the term "character," which would be inconsistent with the plain reading of the ordinance in question. Unlike wholly subjective criteria such as an individual's view of what is in the public interest, a municipality's neighborhood plans are formally adopted and readily accessible to the public, and thus this criterion would afford poor cover for unconstitutional viewpoint discrimination. Thus, it is the conclusion of the court that Kenosha's cabaret licensing scheme is not an unconstitutional prior restraint because it does not afford the decision-maker unbridled discretion.

## V. CONCLUSION

Despite the amendment of the relevant ordinance and the fact that the plaintiff now possesses a cabaret license, the plaintiff has standing to pursue a facial challenge to both the prior and current ordinances. While the amendment of the ordinance mooted the plaintiff's claim for equitable relief with respect to the absence of a time limit for the licensing authority to resolve an application, the plaintiff's claims for damages resulting from the absence of a time limit under the prior ordinance remains actionable.

The plaintiff's claim for legal and equitable relief with respect to its allegation that the ordinances afforded the decision-maker unbridled discretion also remains, but fails upon its merits. Although the ordinance affords the decision-maker some degree of discretion, it is far from unbridled. The ordinances offer sufficient specific and objective criteria that the decision-maker must consider and thus are not an unconstitutional prior restraint.

Accordingly, the plaintiff's motion for summary judgment, (Docket No. 17), is granted with respect to its claim that the prior ordinance was an unconstitutional prior restraint because it lacked a time limit for the reviewing authority to act but denied as to all other grounds. The defendant's motion for summary judgment, (Docket No. 22), is granted with respect to the ground that the prior

and current ordinances did not afford the decision-maker unbridled discretion and denied as to all other grounds.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for summary judgment, (Docket No. 17), is **granted in part and denied in part**. The motion is granted with respect to the plaintiff's claim that the prior ordinance was an unconstitutional prior restraint because it lacked a time limit for the reviewing authority to act and denied as to all other grounds.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment, (Docket No. 22), is **granted in part and denied in part**. The motion is granted with respect to the plaintiff's claim that the prior and current ordinance are an unconstitutional prior restraint because each afforded the decision-maker unbridled discretion and denied as to all other grounds.

The court's scheduling order of October 24, 2012, (Docket No. 16), remains in place.

Dated at Milwaukee, Wisconsin this 14th day of February, 2013.

AARON E. GOODSTEIN
U.S. Magistrate Judge