UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**BC TAVERN OF KENOSHA, INC.,**
*doing business as*
**The Library Bar,**
                **Plaintiff,**

         v.                            Case No. 11-C-959

**CITY OF KENOSHA,**
                **Defendant.**

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

On February 14, 2013, this court entered an order resolving the parties' opposing motions for summary judgment. (Docket No. 33.) Following the court's decision, the plaintiff filed what it has captioned as a motion for reconsideration. (Docket No. 34.) Contrary to Civ. L.R. 7(a), this motion does not state the statute or rule pursuant to which it is made. This is not surprising seeing as, strictly speaking, there is no such thing as a motion for reconsideration. Day v. Hill, 2007 U.S. Dist. LEXIS 48626 (N.D. Ind. July 3, 2007) (citing Hope v. United States, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994); Talano v. Northwestern Medical Faculty Foundation, Inc., 273 F.3d 757, 760 n.1 (7th Cir. 2001)). While the court possesses the inherent authority to reconsider its interlocutory orders, and thus litigants occasionally ask a court to exercise this authority, a court will do so under only very limited circumstances. Since the plaintiff's motion rests largely upon arguments that were, or should have been, made when the matter was initially before this court, this is not a case where such extraordinary action is warranted.

Because the relevant facts of this case were set forth in detail in the court's prior order, BC Tavern of Kenosha, Inc. v. City of Kenosha, 11-C-959, 2013 WL 592888, 2013 U.S. Dist. LEXIS

19999 (E.D. Wis. Feb. 14, 2013), the court's recitation here shall be brief: The plaintiff, BC Tavern of Kenosha, operates a tavern known as the Library Bar. Because it holds a liquor license and presents live music, it is required by local ordinance to also hold a cabaret license. The plaintiff previously held a cabaret license but the defendant refused to renew it in 2010. The plaintiff filed suit in state court under Wis. Stat. Ch. 68. The state court found the ordinance unconstitutional because it lacked a time limit in which the license review process must be completed. The defendant then amended the ordinance to add a time limit. Shortly thereafter, the plaintiff filed the present action contending that both the prior and the current ordinances were facially unconstitutional. While this action was pending, the plaintiff again applied for a cabaret license, which was granted.

The Kenosha cabaret license ordinance states in relevant part:

In determining whether a Cabaret License should be granted, the Common Council shall consider the following factors, giving to each whatever weight is appropriate in the particular factual circumstances:

1. Whether the proposed license will have a substantial negative impact upon the surrounding properties or the neighborhood within 5,280 feet of the licensed premises, in terms of increasing noise, as defined in Chapter 23 of the Code of General Ordinances, and/or traffic congestion.

2. The availability and type of parking on or off the proposed licensed premises.

3. The existing or planned character of the neighborhood.

4. Applicant's compliance and past performance with any/all licensing laws.

This court previously concluded that, although the prior ordinance unconstitutionally lacked a time limit in which the decision-maker must act, the prior and current ordinances did not unconstitutionally vest the decision-maker with unbridled discretion. BC Tavern of Kenosha, 11-C-959, 2013 WL 592888, 2013 U.S. Dist. LEXIS 19999.

In its motion for reconsideration, the plaintiff contends that the ordinance is a prior restraint scheme. The plaintiff submits that because the ordinance is limited to cabaret licensing, and cabaret entertainment is expressive activity, it is inherently protected by the First Amendment. (Docket No.

2

34 at 15-16.) Thus, under the plaintiff's reading of Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123 (1992), the court is required to find the ordinance unconstitutional if it vests *any* plausible discretion with the decision-maker. (Docket No. 34 at 4-5.) The defendant counters that this court correctly concluded that its ordinance was not "subject matter censorship but a content-neutral time, place, and manner regulation." (Docket No. 35 at 7.) As such, the court appropriately analyzed the ordinance under time, place, and manner guidelines. (Docket No. 35 at 8.)

The relevant ordinance is limited to establishments holding a liquor license. Cabaret entertainment in any other venue within the City is completely unaffected by this ordinance. Nor is cabaret entertainment banned in establishments holding a liquor license; the ordinance merely requires the establishment to satisfy the requirements of the ordinance. As such, it is properly analyzed as a time, place, and manner regulation. See, e.g., City of L.A. v. Alameda Books, 535 U.S. 425, 434 (2002) (plurality opinion) (discussing Renton v. Playtime Theatres, 475 U.S. 41 (1986)).

Thus, the next step in a court's analysis has often been to discern whether the ordinance is content-based or content-neutral. Id.

> Content-based regulations are defined as those that distinguish favored from disfavored speech based on the ideas expressed. Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 643 (1994). If it is necessary to look at the content of the speech in question to determine whether the speaker violated the regulation, then the regulation is content-based. Gresham v. Peterson, 225 F.3d 899, 905 (7th Cir. 2000). If not, it is content-neutral.

Clarkson v. Town of Florence, 198 F. Supp. 2d 997, 1005 (E.D. Wis. 2002).

"[T]he First Amendment tolerates governmental interference with general categories of expressive conduct, as opposed to actual speech." Joelner v. Village of Wash. Park, 378 F.3d 613, 622 (7th Cir. 2004) (emphasis omitted) (citing Schultz v. City of Cumberland, 228 F.3d 831, 841 (7th Cir. 2000)). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Ward v.

3

Rock Against Racism, 491 U.S. 781, 791 (1989). "Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" Id. (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984)).

The relevant ordinance makes no distinction based upon the content of the expression. The distinction drawn by the ordinance is with the medium—live entertainment versus all other forms of expression—rather than the content of any message conveyed in that entertainment. Such a distinction does not amount to a highly suspect content-based regulation of protected expression. See, e.g., Renton, 475 U.S. at 48 (finding ordinance targeting adult entertainment to be content neutral); see also Schultz, 228 F.3d at 841 (noting that the restrictions on sound amplification approved in Ward, 491 U.S. at 791, and the prohibition of residential picketing approved in Frisby v. Schultz, 487 U.S. 474, 488 (1988), "control the surrounding circumstances of speech without obstructing discussion of a particular viewpoint or subject matter"). "This sort of singling out is not impermissible content discrimination; it is sensible urban planning." Alameda Books, 535 U.S. at 448 (Kennedy, J., concurring in judgment).

Accordingly, the court agrees with the defendant. The relevant ordinance is a content-neutral time, place, and manner regulation. Therefore, Forsyth is inapposite. The licensing scheme at issue in Forsyth was a content-based permitting scheme under which the amount of the fee charged for a parade permit was tied directly to the content of the demonstrator's message, with those expressing unpopular messages likely to face higher fees. Forsyth, 505 U.S. at 134.

As a content-neutral time, place, and manner regulation, the relevant ordinance is subject to intermediate scrutiny. Clarkson, 198 F. Supp. 2d at 1006 (citing Rodney A. Smolla, *Smolla and Nimmer on Freedom of Speech* § 3:2 (2001)). The focus of the plaintiff's challenge was the degree of discretion afforded the decision-maker in the licensing scheme. Having fully considered the renewed arguments contained in the plaintiff's present motion, the court holds to its prior

4

conclusion that the relevant ordinance satisfies constitutional minimums. BC Tavern of Kenosha, 11-C-959, 2013 WL 592888, 2013 U.S. Dist. LEXIS 19999.

The plaintiff also contends that the court erred in its construction of the phrase "existing or planned character of the neighborhood," as it is used in the ordinance. Neither party offered the court much as to the meaning or application of this phrase. Thus, the court naturally applied a common and ordinary construction, accepting, for example, that "planned" meant proceeding according to some manner of plan. If the defendant, in a specific instance, failed to apply this ordinance in accordance with its common and ordinary definition, this would not render the ordinance facially invalid under the First Amendment. Rather, such a failure may be the basis for a certiorari action under Chapter 68 of the Wisconsin Statutes or perhaps a constitutional as-applied action.

Finally, the plaintiff contends that the court erred by ignoring a separate part of the relevant ordinance that requires the police department to make a written report to the City Attorney regarding the police record of the applicant "which may reflect on good moral character or business responsibility." (Docket No. 34 at 23.) The City Attorney shall then examine that record and make a recommendation to the Committee on Licenses / Permits whether the license should be granted. (Docket No. 34 at 23.) The Committee shall then consider that recommendation and "all other information before it" when making its recommendation to the Common Council as to whether the license should be granted. (Docket No. 34 at 20-21.)

The applicant's police record is relevant only to the formation of certain recommendations by non-decision-makers. The Common Council possesses the decision-making authority, and the ordinance is clear what factors it may consider in deciding whether to grant a license. The plaintiff contends that the fact that such additional information is provided raises the inference that it is considered by the Common Council. The fact that the Common Council is provided with

information beyond that which it is permitted to consider in its decision could potentially subject any denial of a license to a charge that the Common Council did not abide by its own criteria. Notwithstanding, the fact that the Common Council may be provided with extraneous information is not a basis for finding the ordinance facially invalid under the First Amendment.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for reconsideration, (Docket No. 34), is **denied**. The court's prior scheduling order, (Docket No. 38), remains in effect.

Dated at Milwaukee, Wisconsin this 26th day of July, 2013.

AARON E. GOODSTEIN
U.S. Magistrate Judge